We'll hear argument first this morning in case 21-857, Jones v. Hendrix. Mr. Ortiz. Mr. Chief Justice, and may it please the Court, the Eighth Circuit ruled in this case that someone imprisoned for something the Court later determines has never been a crime has no means to challenge his continued detention once his opportunity to file a 2255 motion runs out. He must remain in prison despite having done nothing wrong. As this Court held in Davis, conviction and punishment for an act that the law does not make criminal inherently results in a complete miscarriage of justice. The Eighth Circuit's ruling is wrong for four separate reasons. First, it violates the text of 2255e. Its key terms all indicate the traditional habeas relief should be available, that a prisoner should have one opportunity to have the correct law applied to his case. The Eighth Circuit held, however, that so long as 2255 provides a purely formal opportunity to raise an issue, it doesn't matter whether the law applied is correct or wrong. Prisoners in this situation, moreover, do not even have that purely formal opportunity. They will almost always be barred from raising the issue in their initial 2255 motion. Second, the Eighth Circuit made the Savings Clause almost completely superfluous. It identified two categories of cases where it believed the Savings Clause applies, but the Savings Clause actually applies to neither. In both situations, the prisoner petitions under 2241 directly. Third, the Eighth Circuit created four independent constitutional difficulties. It effectively suspended important use of the writ as originally understood, and it raised substantial due process, separation of powers, and Eighth Amendment concerns. It denied Jones any opportunity to ever test his claim under what has always been the correct law. Finally, the Eighth Circuit wrongly concluded that allowing Savings Clause relief would undermine Section 2255H. It does not. The Savings Clause and 2255H are independent, congressionally authorized routes to collateral review, and nothing suggests that in enacting Section 2255H in 1996, Congress intended to repeal the Savings Clause. The Eighth Circuit's repeal, by implication, is unjustified. Your Honors, the Eighth Circuit here moved that because the prisoner had a theoretical right to raise an opportunity, had the right to raise an opportunity in his initial 2255 motion, which was for-which subsequently was foreclosed under existing circuit precedent, which this court later declared wrong. The possibility of en banc review, or cert petition to this court, made his quest to have the correct law applied real. That's, in effect-that represents, in effect, an ineffective or inadequate remedy to test the legality of the prisoner's dissension. There are three different problems with this, Your Honor. Before you get to those, Counsel, it seems to me that you've got a basic-and your friend has the same type of conundrum. I mean, your problem, of course, is that you're sort of undermining EDPOT. You're allowing to be revived the sort of claims that EDPOT wanted to preclude. And I think it's a challenge to explain why that type of result would prevail. On the other hand, your friends have the problem that you've already identified. Well, what's the Savings Clause for if there's really nothing to save? And I guess as an abstract matter between those two types of problems, it seems to me that you have the more serious one, because it's really express. You know, these claims you can't bring. And then there's an exit, and you say, well, you can bring them over here. That seems pretty-that's a hard reading to prevail on. Your friends, on the other hand, it's sort of a less extravagant argument to have to make. You've got a Savings Clause, and, you know, it doesn't save anything. It's just there in case it's needed. I mean, it's sort of not that-it doesn't strike me as serious a conundrum. Well, Your Honor, I think that it mistakes a bit the structure of 2255 and the text and structure and purpose of 2255H in particular. As I said in the opening, there's no real indication, let alone by the clear statement that this Court has required in cases like McQuiggan and Sincere, that Congress actually meant to constrict traditional habeas jurisdiction in this way. For sure, 2255H I and II limit the reasons for which someone can pursue a successive 2255 remedy. There's no indication that they meant to foreclose recourse to traditional habeas through 2255E. 2255A, Your Honor, sets up the 2255 process. 2255E serves as a gatekeeper, determining what causes come into that process, what kinds of cases come into that process, and what ones go through 2241, the traditional habeas route. And 2255H says, once you're in the traditional motion to vacate process, when and under what circumstances you're allowed a second bite at that particular process. It doesn't really affect the availability of 2255E relief, which sends you to 2241 at all. But certainly, Your Honor, there's not the clear statement in 2255H that it is meant to repeal 20 parts of 2255E. Counsel, I'd like you to go, the Chief makes it an either or. Most of the court of appeals who have sided more with you than with amici recognize that the savings clause cannot be invoked every time a 2255EH applies without blowing it up. So you have to have some limiting principle. And the limiting principle that most of the court of appeals have found is the one proposed by the government, which is that they thread the needle by saying that innocence claims should be one of the rare cases where the savings clause is triggered because otherwise there would be a fundamental miscarriage of justice. Now, your brief did not go as far as the government in saying that. Are you eschewing the government's position? Or are you accepting it? No. For purposes of this case, Your Honor, we accept the government's position. We believe that there's not much daylight between its position and ours on purely statutory claims. We do not necessarily agree with it across the board. For example, their interpretation of when 2255H2, for example, does restrict traditional habeas religious and constitutional claims. But in the universe of statutory claims, there's really not much daylight on the ground between their position and ours. Counsel, did I misunderstand your argument? I thought one of the areas of daylight was that you thought it would apply even when circuit precedent changed as opposed to just when Supreme Court precedent changed. Did I misunderstand that? Sorry, Your Honor. I was just referring to the comparator in the government that the government is proposing to the traditional habeas relief and the bench line. There are two disagreements between us and the government, Your Honor, which are very important. One is that under our view, a change in circuit precedent, as you've identified, Justice Barrett, should count for these purposes. We believe that they've misconstrued Davis v. United States. In that case, Your Honor, the change of law by this court, the Guttnacht case, happened while the Davis case was on direct appeal in the Ninth Circuit. And then the Ninth Circuit remanded the case to the district court, and the case came back up again. And it's impossible for Guttnacht to have represented the change in law that was relevant there because it changed before the direct proceedings were concluded. The change in law that this court itself identified was a change in law of the Ninth Circuit in the Fox case, which later interpreted Guttnacht, Your Honor. How do you propose to handle some of the choice of law problems that changes your theory that circuit precedent changes count create? There are arguments on both sides, Your Honor, which you identified in your Chazen opinion while you were sitting on the Seventh Circuit. In our view, the view that you gestured at is actually the correct one, that the court should apply the law of the sentencing circuit rather than its own. And I know that is, in some sense, an anomaly, but it's not a complete anomaly in our system. For example, the federal circuit, I believe, now applies the law of the circuit to supplemental non-patent claims in cases that are before it. So this would be no stranger than that kind of thing. And certainly, the federal circuit has not been authorized by Congress to do that. It's a rule that it has developed under federal circuit common law. The other big difference between the government's view, Your Honor, and ours concerns the actual innocence test. The government says that actual innocence should be a gateway doctrine regulating everything that goes through 2255E. Interestingly, though, all the support the government has cited for that, Schlup, McQuiggan, Bowsley, and Kuhlman, all concern the use of the RIP doctrine. And it's our contention that the actual innocence test is one way of getting over the abuse of the RIP doctrine in the 2241 proceeding or 2255 proceeding when it is raised by the government. But it is not the only way, and should not be created at or placed at the 2255 gateway to 2241 as an absolute and singular requirement. We believe that the traditional other gateways, like cause and prejudice for procedural default, should be available, too. And we believe that our client actually would satisfy the procedural default standard here. And if not, could actually establish actual innocence. But that should be a matter on remand from this Court. So, counsel, if I understand... I'm sorry. Go ahead. If I understand, I just want to make sure I've got the points of difference between you and the government. One is circuit foreclosure, in your view, as opposed to Supreme Court foreclosure, in the government's view. Yes, Your Honor. Second is actual innocence versus maybe something more than actual innocence required. And third is, I think, that you take the position that absent adopting some form of relief here, there would be serious constitutional questions raised by the statute, and the government doesn't believe so. Is that a fair summary? That's a fair summary, Your Honor. Okay. And then, with respect to what the Savings Clause would do on the amicus's reading, you argue it would do too little work. But it was adopted first in 1948, and it was done so when habeas was shifted primarily from the sentencing court to the court of confinement. And for at least 50 years, the only purpose of that statute was to ensure that if the sentencing court was unavailable, court marshals, the sentencing court, you couldn't transfer the prisoner for whatever reason, natural disasters or other COVID problems, perhaps, that there would be some court available. And so I guess I'm unclear why, after 50 years, we would expect the Savings Clause to do a great deal of new work. Well, first, Your Honor, it wasn't doing some of the work that you and the court appointed amicus have identified. It did in the Tenth Circuit. I know that. I remember that. Well, Your Honor, this court itself, in Marti's case, very recently declared that court marshals preexisted the Constitution, let alone an act of Congress. They were not established by an act of Congress. They were recognized by Congress. The court marshal is evanescent. It disappears. There is no court to go back to. And so, at least in Tenth Circuit, and I believe in a lot of other courts, in those cases, the court of confinement was made available because there was no sentencing court to go back to. So that was one example. Natural disasters was another example. Are you aware of any others during the 50-year period between 1948, well, not 50 years, but almost 50 years, between 1948 and 1995? Well, if I may just for a moment push back a little bit on that. Of course. I'm sorry. But, of course, court martial, traditional habeas relief was available for court marshals. But it was not made available through 2255E. No, of course. But that did make it, 2255E was cited as an authority to send those cases to the 2241 court. Usually not, Your Honor. Maybe in the Tenth Circuit it mistakenly was, but they're not authorized. Mistakenly? Well, they're not, court martial, 2255 only authorizes people to pursue 2255A, authorizes people to pursue motions to vacate under 2255 only when they're under sentence by a court established by an act of Congress. And court marshals are not established, so 2255 is not an option. Okay, so you're saying that wasn't even available during the 50 years. Right. Okay, so what was it used for during those 50 years? Well, there are two cases we've been able to identify. One was where a case was transferred from the, sorry, when there was a conviction from the District Court of Panama Canal. And another was when the courts were transferred to the state courts of Alaska after Alaska became a state. Okay, fine. Whatever the examples are, they were very limited, do you agree? For sure, but that doesn't indicate, Your Honor, what Congress intended the scope of the Savings Clause to be. The Savings Clause, as this court itself described in Hammond and a decade and a half later in Presley, was meant to serve as a kind of constitutional backstop so there would never be any constitutional doubt about the adequacy of 2255. And so as Congress originally intended in 1948, as the contours of Section 2255 changed, it would never be placed under constitutional pressure because 2255 would always allow this out. All right, that takes us back to the constitutional disagreement you had with the government, though, right? About whether only, about whether the constitutional doubt— Whether there was a dispute required for constitutional purposes that you're advocating. Well, that was only one purpose for the Savings Clause, Your Honor. The other purpose this court identified in Hammond, and I believe in Presley as well, was to prove that it was—to make sure that habeas overall, either through 2255 or through 2241, provided an adequate remedy. Can I test that proposition just for a moment? So you speak of the necessity for an adequate and effective alternative, and you suggest if there's circuit foreclosure, then it isn't an adequate or effective alternative. But when we speak of adequacy and effectiveness in, for example, ineffective assistance claims, we use those very terms, and we often find—and these are often habeas cases— that counsel was effective even if he lost. So why should a victory be equivalent to effectiveness? Well, I'm sorry. I'm sorry, Your Honor. We—I must have mis-explained—neatly explained things in our briefing. We do not claim that an adequate remedy guarantees a prisoner's victory. We believe that it guarantees that the correct law be applied to his case at least once. And that has not been the case here. Thank you. And that's not been possible. Counsel, you do mention, in response to Justice Gorsuch, you talk about a couple of cases. But in your reply brief, you said that you had reviewed all 353 saving clause cases prior to— and you only found the two. Could you please tell me what the others involved? Sorry. We looked for cases, Your Honor, that—we did a search for ones that used the term. So we could try to catch anything where the term came up. Right. And then we went through all those cases, and we looked for ones where it was actually used. And we—the other—we found all these— Which term were you using? Were you using the 2255E, the savings clause? Yes. We were using the search that is described in that footnote. So there are lots of—there were 253 or whatever it was, examples of where it was sort of invoked. Right. But there were only two where it appeared that it was actually used. I see. So the others it wasn't used. Right. Okay. That's why— But in this case, Your Honor, people in Mr. Jones' position don't even get the formal opportunity often to raise their claim in the initial habeas proceeding, even in the hope that later on they might be able to petition the court, which has foreclosed them on the substance. Thank you, counsel. I'm sorry. Finish your sentence. It changes view en banc. Sorry. Thank you. Justice Thomas? Justice Alito? Is it odd that 2255H2 mentions only new rules of constitutional law rather than new interpretations of statute? Your Honor, Congress in that took the—we believe that what Congress did there is it took the language this Court had developed in McCleskey v. Zant on actual innocence and basically codified it. So it was taking that one item, that one piece of doctrine, and just writing it into the statute with some changes, of course. But that's basically what it did. And it didn't mean to actually address all the other types of claims available. But certainly, Your Honor, there isn't a clear statement that this Court requires before constricting habeas jurisdiction that Congress meant to repeal 2255E and enacting 2255H. Justice Sotomayor? No, thank you. Justice Kagan? Justice Jackson? Yes. I have a question that just arises out of something you said at the beginning that I thought was very interesting. I have been focusing in on the interaction between E and H because I think the sort of questions presented in this case teed up that way in a certain way. And, you know, if there's a savings clause, what does ineffective mean as it relates to what's happening at H and who has the better interpretation about that? What you said at the beginning that I found very interesting was this interpretation exercise needs to be taken in the light of the entirety of 2255 and what is going on in each provision. You know, please interpret it related to the structure of this statute. You said that A sets up the process, it gives us the motion, it creates the whole scheme. Then sort of, I guess, I'm just trying to do it right here on the stand, B, C, D, it looks like it's talking about procedural matters when the motion is properly entertained. And if you were in court and you were sort of going through in order, I think this is maybe how you would approach it in actual application. When you get to E, the question is, okay, so what about habeas? Can people still be filing a habeas motion while this is going on? And you find the answer there about that. And then you keep moving on. You know, statute of limitations is in F. And then you get to H. It's the gatekeeper, you said. Is this a successive motion the court is asking at this point? And if so, can I proceed? If we think about it in that way, then it's sort of like E is not really interacting with H and saying anything about whether habeas rights would still exist for the purpose of this case. Am I right in sort of how I'm starting to do this? You are right, Your Honor. I would qualify one thing you said, which is that 2255H is the gatekeeper for a particular thing. Successive 2255 motions. 2255E, on the other hand, is a different type of gatekeeper. In some ways, it's the most important provision in 2255 because it determines whether you get into 2255 at all or you start over at 2241 or maybe the way we've been talking about it is you come in through 2255E gateway. But actually, 2255E is the traffic cop here. At the beginning, we just sort of have these claims and we're like, which is the right world that we need to be in? The 2255 world or the 2241 world? And E is doing that work. And then once we're in the right world, we keep on going with respect to the application of statute of limitations or is this a successive motion or whatever. Yes, Your Honor. Thank you. Thank you, Counsel. Mr. Fagan. Thank you, Mr. Chief Justice, and may it please the Court. As you point out, Mr. Chief Justice, this case presents something of a conundrum and it's no secret that it's one that we've struggled with. And what makes this case difficult is that the key phrase, inadequate or ineffective to test the legality of his detention, obviously requires some comparator benchmark, and it can be a little bit difficult to identify what the proper benchmark is. And for a long time, we in the lower courts were operating under the assumption that the choices were between kind of indeterminate notions of fairness, which is, I still think, what Petitioner is offering, and kind of an unhelpful self-comparison where what you see is what you get with 2255, which is, I think, what the Court of Appeals did and what Amicus is defending. But I think this Court's case is, when we took a fresh look at this, in Hayman and Sanders' read the text in a third and much better way that makes federal habeas corpus the comparator. The saving clause quite literally saves those lingering applications of habeas corpus that Congress has never withdrawn and that Section 25's motions remedy doesn't itself cover. And one of those is statutory claims of actual innocence by a prisoner who can rely on an intervening decision of this court. Now, I think the critical interpretive question in this case is the negative implication of Section 2255H, which doesn't actually mention habeas. To what degree did Section 2255H not only restrict the motion remedy to which it expressly refers, but also provide the kind of clear statement that's necessary to withdraw the habeas remedy as well? And I think a couple of things that might be useful to explain why we think it doesn't withdraw the habeas remedy for the statutory claims would be to discuss a little bit how you figure out what the current scope of federal habeas is and what the kinds of statutory claims we're talking about here. But I realize the Court has already indulged me, and I, of course, defer to the Court's questions. Can I ask you, Mr. Fagan, about whether or not the ordering question that I just spoke with petitioners and counsel about also helps a little bit with the negative implication? In other words, if we review E in the order of things as a court applying these principles or this statute as doing work to tell us should we be in 2241 or should we be in 2255, does that help in terms of what we can later draw from H? Well, Your Honor, I don't know that it – I mean, I think that is one helpful way to think about it, but I think the critical question is just the operation of 2255E in itself in how it answers that question. And I think what it says is that for constitutional purposes and because Congress wasn't trying to withdraw the habeas remedy insofar as it might disadvantage federal prisoners when it was setting up this new system in 1948, what it's telling us is that it keeps the contours of the federal habeas remedy. And before that remedy would have allowed for a person in Mr. Jones' situation to claim miscarriage of justice and bring this claim? Yes, and I think we see that from Davis, which essentially is the situation. It came up under 2255, but it referred back to traditional habeas principles, and I don't know that there's really any dispute about statutory claims like this being covered. You mentioned that one of the situations in which your interpretation would apply is where this Court has reinterpreted the meaning of a substantive criminal provision. Where else would it apply? Well, Your Honor, I think it could potentially cover some of the situations the amicus has identified, although some of them, I think, frankly, wouldn't even fall into 2255 in the first place. Federal habeas corpus is really divided into three parts. The first one is like challenges to conditions of confinement or good time credits, things that challenge the execution of the sentence rather than its imposition. Those don't even come into 2255 in the first place, and there's really no need for anything to exclude them. When you speak about the traditional scope of federal habeas corpus, at what point in time are we supposed to look? So, Your Honor, you look at federal habeas corpus now, and the body of federal habeas corpus now can be informed by Section 2255 itself and its limits and the limits that Congress has imposed on state prisoners through 2244. And if I could just take a second to explain why that is. I think there are certain circumstances in which we can draw negative implications from 2255, particularly when they're reinforced by 2244, which the explicit limitations on constitutional and factual claims in 2255H definitely are because they are mirrored in 2244B. And, in fact, 2244 is expressly cross-referenced in 2255H. And then if you look at 2244, it has a provision 2244A. 2244A literally only applies to a second or further habeas petition that a federal prisoner might file, so it doesn't literally apply to a 2255 motion followed by a habeas petition. But one thing that it does is it points back at 2255 for the relevant limitations. Those relevant limitations include, this gets back to Justice Jackson's point, 2255H, which limits excessive or abusive constitutional and factual claims, but doesn't say anything about statutory claims and it includes E. I'm sorry, Justice Kagan. I'm sorry. And it includes E, which is the critical provision that we're interpreting here. I'm sorry, Justice Kagan. No, no, no. Suppose 2255H did include a specific provision that said you can't bring a successive 2255 motion based on an intervening statutory change. Would then there be a strong negative implication? Yes, I think there would because then we'd be in this third category. Like I mentioned two of the three categories of federal habeas claims. One is about execution of the sentence. We're not really talking about that here. One is federal prisoner claims that have analogs to state claims, and I just described a little bit about how those might shake out. And then we're talking about a kind of claim, a statutory claim that's really unique to federal prisoners, and I think where Congress has expressly precluded it and clearly focused on it, then that would be a much more difficult case. It's much more difficult. Let me make sure I understand your answer. You would answer it the reverse way. I think we probably would, yeah, Justice Kagan. Yeah, and that's so even though it would refer only to 2255 motions and not to habeas, right? Yeah, I think our critical point here, Your Honor, isn't that 2255 can say nothing about the withdrawal of the federal habeas remedy. It's just that, as this Court has stated in multiple recent cases like McQuiggan and Holland, it requires something of a clear statement or a bright light indicator to withdraw the federal habeas remedy, and I think you have that for the stuff that Congress clearly focused on, but we don't have that for the kinds of claims, the kinds of statutory claims that we're talking about here. Those are actually quite different from what Congress might have been thinking about, even in 2255F3, for example, which imposes a statute of limitations that doesn't include the word constitutional, like 2244s does, where you can often have a claim based on a statutory right that is framed in constitutional terms. The kinds of rehaif claims we see on first 2255s aren't these kinds of statutory claims, which essentially are claims of actual innocence in merits form. What they are are claims of an unknowing plea mirroring what happened in Boozley, and they're claims about the jury instructions, which sound in the Sixth Amendment. So you've got Fifth and Sixth Amendment claims that can be based on a statutory right, and that might have been what Congress was thinking about. Mr. Fagan, what are we supposed to make of the fact that the government's position before 1998 appeared to be that of the petitioners, that either a circuit foreclosure test was sufficient to invoke the Savings Clause or that there were constitutional problems with interpreting the Savings Clause otherwise? Then from 1998 to 2017, I think, if I've got it right, the government took the opposite view, the view of the amicus, that the circuit foreclosure tests, neither of those tests work, and that the Savings Clause should be measured about whether it's effective and adequate to raise the argument that the baseline would be implicit in the text or explicit in the text. And now, for the first time, the government's coming up with a completely new theory that no circuit court's adopted and neither side in this litigation pursues. What are we supposed to make of that? Well, Justice Gorsuch, just to... I mean, it's a clever argument, but the brief discusses it as the natural reading of the statute, but no circuit court over the last 50 years has read it that way. Well, Your Honor, I think you're correct that we've shifted positions. I think your chronology, in candor, we've shifted around a little bit more. Even more than I described. I've been generous. Just to be completely... Just as I was generous to petitioners about court marshals, and apparently those are not permitted either, but okay. I just want to be completely up front with the Court about that. But I think the bottom line, Your Honor, is the way we're interpreting it now is the way that the Court actually interpreted it itself in Hayman and Sanders, and I think it's mirrored in Swain against Presley, which interpreted the analogous DC provision, and in Boumediene, which is that the saving clause essentially makes sure that federal prisoners weren't disadvantaged by the adoption of this new remedy. They weren't substantively disadvantaged or procedurally disadvantaged. And in doing so, it ensures that there aren't going to be any constitutional problems. We don't think there will be any constitutional problems in these particular circumstances under Felker against Turpin, but even if there were, the easiest way to make sure there's no constitutional problems with the withdrawal of habeas is to keep a residue of habeas where they might inadvertently have missed something. I'd like to return to Justice Alito's question, which is, you ask us to use the baseline of habeas as it existed between about 1948 and 1995, and ignore what happened after 1995 and before Brown. Well, I guess 1953, though you do pluck a couple of cases before Brown. It seems a bit of a bespoke reading of habeas. It would be, Your Honor, but let me clarify, that is not actually our reading of habeas. We think that you look to the federal habeas remedy now. And as I was trying to describe in response to Justice Alito, figuring out the contours of the federal habeas remedy now, you would look at traditional habeas, so things like Davis would tell you something. Should we look at before Brown, in which it was mostly jurisdictional, that habeas was limited to jurisdictional questions? Well, Your Honor, I don't think you would look at federal habeas as it exists today, which to the extent that before Brown cases aren't kind of superseded by some of the later ones, you could potentially look at them. But we do think, and I just want to be very clear on this, we do think that it is informed, as this Court has said, by the statutes that this Court has enacted. And it can be informed by Section 2255, particularly in its provisions like 2255H or its statute of limitations, that are also mirrored in state habeas. Because that gives us a very clear indication that habeas as it stands today does not allow those kinds of claims, the kinds of constitutional and factual claims that I still think my friend the petitioner's approach might in theory allow. But one thing Congress did not speak to were the kind of statutory claims that you see in Davis that everyone agrees were available in traditional habeas. We don't have that kind of clear statement. And the kinds of claims we're talking about here are claims that someone is in prison, potentially for the rest of his life, for conduct that Congress itself, according to this Court, never wanted to make criminal in the court. Do you have any concern about the complexity of the rule that you are advocating? If it were limited strictly to a situation like Rahafe, fine, everybody could understand that. But are you concerned that every federal prisoner who wants to bring a successive motion is going to claim that this falls within the traditional scope of habeas, and this would be an escape clause that will be invoked again and again and again, and all the district judges are going to have to analyze the traditional scope of habeas and see whether the claim actually falls within that? No, Your Honor, we're not worried about that for two reasons. Number one is, as I've described, the world of habeas. The conditions of confinement claims are already dealt with in 2241, and then on merits claims we have the constitutional and factual claims that are like state habeas. Those are already addressed. We've dealt with those. And then we're just left with these kinds of statutory claims, the only kinds of statutory claims that you could possibly ever bring under successive and abuse of the writ doctrine are going to be claims based on intervening decision of this court, and that's going to be a set of claims, but that gets to my second reason, which is under both successive habeas petition doctrine under Coleman or abuse of the writ doctrine under McCluskey, for example, you will see that that is going to require a showing of actual innocence that's going to be very hard to make and can get knocked out pretty easily at the threshold. Let's say I'm a district judge and I haven't dealt with this problem before. Give me your best summary of the rule that I should apply when I get an effort to file a second or successive habeas petition. Well, Your Honor, honestly, I can't tell you that it's impossible that there's some implication we haven't foreseen, but we really think this is, as far as merits claims go, essentially probably a category of one. So you look to see whether it is the type of claim that we're dealing with here, a purely statutory claim that asserts that somebody is in prison for something that Congress never made a crime. If so, can that person make the threshold necessary showing of actual factual innocence under Boozley, which can take into account not just the evidence that was presented at trial, but all the evidence that could have been presented, and we've stayed in our brief and I'm happy to restate here all the reasons why a petitioner can't even get a toe in the door. Can I just clarify what you mean by actual factual innocence? So when you have such a person and they're in jail for conduct that Congress, we now know, says was not criminal, what is the factual showing that they didn't do the thing that Congress says is not criminal? What factual showing do they have to give? It's the question of the conduct, Your Honor. So it's different from a sufficiency review, for example, because under rehaif, we were never required to introduce evidence of someone's knowledge of their prior felon status. Before rehaif, the circuits weren't requiring us to do that, so there will be a lot of cases where we didn't actually introduce that evidence. We'll have plenty of evidence that that's true, and here we actually have both trial evidence and extraneous evidence, but this is going to include kinds of things like stuff that came up at plea negotiations, which the sentencing court never saw, which is actually a reason why Congress wouldn't have found it particularly important. So it's just an opportunity for the government to introduce the evidence on whatever the new legal standard is? Yes, Your Honor, and I think Boozley is incredibly clear on that particular point. What about ACCA claims? I mean, I think rehaif claims, sure, it seems like that would be pretty narrow under review, but, I mean, we have a lot of ACCA cases, so when you think about Mathis, I mean, all of the cases that apply the categorical approach then kind of can lead to these problems in district courts under the government's view, it seems to me. That would be much harder, kind of to Justice Alito's point, for district courts to unwind. Well, a couple of points on that, Your Honor. Number one is that, you know, you may or may not agree with us on this extending to statutory maxima, but that's not squarely presented in this case. Number two, Mathis in particular is an old rule. Number three, this court in the death penalty context in Sawyer suggested an even higher actual innocence showing may be necessary for sentencing-type claims. And I'd further add to this that we've already been dealing with a lot of ACCA claims under the circuit, and it's generally not-hasn't proven that difficult to apply because it's a purely legal inquiry as to the qualification of various ACCA predicates. Thank you, counsel. Justice Thomas? Justice Sotomayor? I am a little bit concerned with your answer to Justice Kagan. You seem to suggest that a congressional clear statement rule could include something very-plain statement rule, could include something indirect, like 2255H says you can't have a successes petition on this issue, that that would eliminate 2241 and that that wouldn't create a constitutional problem. And by that I mean is someone who's completely innocent of the charge, given your wide definition of innocence, okay, there is no way to look at what they did as fitting the statutory terms that have now been described by this court. There's no inference that could be drawn from the evidence that they did it. They're completely innocent. You're suggesting that that wouldn't create a Fifth and Eighth Amendment problem? Well, first of all, Your Honor, I wouldn't say that that's a wide definition of innocence. But the other thing I would say is- I'm using the words of my colleague Justice Gorsuch. I'm spotting you that. So I spotted for you and accept that, all right, but totally innocent under any definition you use. Well, Your Honor, I don't think there's a problem with that here, because what we're talking about is whether Congress is required to give a further shot at collateral review in these circumstances. I think Felker against Turpin is quite clear that when it looked at the parallel limitations in 2244B, that Congress is free to statutorily alter the abuse of the writ, and I think by analogy the successive writ doctrines to preclude relief in these circumstances. I mean, these cases do have to reach conclusion at some point. And if Congress decides, and it's evident that it has decided, that look, you're just not going to be able to bring these kinds of claims anymore, then I think Congress's judgment is within its constitutional authority. Our point here is that Congress just hasn't made that judgment, and in fact it's got this saving clause specifically just to make sure that whatever the federal habeas remedy would allow is still there, and that's the kind of claim that we're talking about here today. Sure thing. Okay. Justice Kagan? So just going on in this question of what to draw from 2255H, one of Amicus's points is that your argument creates a kind of weird situation where the statutory claims, because they're in habeas, face fewer procedural obstacles than the constitutional and factual claims under 2255. And there's a difference between you on the exact scope of the differences, but I think it's at least true that in habeas you don't have the certificate of appealability and you don't have that pre-filing certification. And so the question becomes, like, why would we think that Congress created a world where the statutory claims are actually easier to bring or face fewer procedural obstacles than the constitutional and factual claims? Well, Your Honor, I'm not quite sure it's correct to think that there are fewer obstacles, but if we're asking what Congress thought, I mean, I would first emphasize we're just proceeding from the text here, and this Court's precedent. Well, but the question in the text, I think, is what the negative implication of 2255 is, and that's the kind of critical issue. So, Your Honor, let me pose a couple of different answers to your question, because, like, obviously I can't tell you exactly what Congress might have been thinking. One thing it might have been thinking, as Justice Barrett pointed out in her separate writing in Chazen, is perhaps it overlooked this, which is fairly realistic because this language was drafted before Bailey against the United States, which was kind of a watershed of a statutory interpretation case that applied to a large number of criminal convictions. It wasn't until a couple of years later in Boozley that it was clear how a case like that would shake out retroactively, and even then Congress was probably thinking about Fifth and Sixth Amendment claims, not pure statutory claims. But if Congress was thinking about this, I think it might have been thinking a few different things. Number one is, first of all, actually these kinds of claims are disadvantaged to some degree because what 2255H does is just removes all the successive and abusive writ doctrine problems, so you don't actually have to make a showing of actual innocence just as a gateway under 2255H. And then you've got the point that I was discussing with Justice Jackson, which is that these kinds of claims aren't really the kinds of claims where you care very much whether they go to the sentencing court or not, because this court made clear in Boozley and House and Schlupp that they involve a lot of extra record evidence that under Rule 11, for example, with plea negotiations, the sentencing court's never seen. And that in turn would have forced Congress, if it were trying to include these claims under H, like a new H-3, to kind of grapple with some difficult issues and maybe rejigger its structure of habeas, which is kind of unwieldy as it is, even more, because, first of all, it's a little hard to get a court of appeals to figure out how to certify that in the 30 days that the 2244 procedures require. And then when we're talking about the certificate of appealability problem, if we're talking about a first 2255, every rehaif claimant is going to pair a statutory claim with a Fifth Amendment claim or a Sixth Amendment claim. You can't do that on a successive motion because those are going to be old constitutional rules. The Fifth Amendment knowing plea rule and the right to jury instructions, those aren't new. They've been there since time immemorial. So they're just bringing a raw statutory claim. You'd have to make some kind of adjustment to the certificate of appealability. And I think Congress probably wasn't troubled by this because, for the same reason it might have overlooked it, it just didn't think that this was going to be a huge class of claims. It may have been wrong about that. The class may have been larger than it thought, but I don't think it was being unreasonable, particularly because I think everyone's in agreement that if Hannibal Lecter is too dangerous to move, he can avoid 2255 as well. Thank you, counsel. Justice Jackson? Thank you, counsel. Thank you. Ms. Ratner? Mr. Chief Justice, and may it please the Court, the simplest reading of the saving clause is the best one. The 2255 remedy is adequate and effective to test a claim when the sentencing court can fairly adjudicate that claim. That means the inmate can get to sentencing court, the court can hear the relevant kind of claim, and the court has the basic procedures it needs to decide the claim. That's the common-sense approach that this court took in Hayman and Swain, and that's how the saving clause applied for nearly 50 years, from 1948 to 1996. Petitioner and the government want the saving clause to mean something dramatically different after 1996, but their theories run headlong not just into history, but into Section 2255H, an H Congress said exactly when it wanted to allow repeat collateral attacks, and not just that, H2 is even more specific and shows that Congress thought about when to allow new claims after intervening decisions of this court. It chose constitutional decisions and not statutory ones. On top of all that, this court generally assumes that Congress acts rationally, and neither petitioner nor the government has any answer to a few really basic questions about why Congress would have acted the way they think it did. One, why would Congress specify when to allow repeat factual or constitutional claims, but would silently handle statutory claims by sending them on a detour through the saving clause? Two, why would Congress send first statutory claims to sentencing court, but second statutory claims to habeas court? And three, as Justice Kagan's question just alluded to, and I don't think the government gave any real answer to, why would Congress give better procedural treatment to repeat statutory claims than to the constitutional claims it elsewhere favored? But don't those questions all assume that Congress was thinking about this problem? I mean, I think one of the things that Justice Barrett pointed out in her prior opinion, and that others have commented on, is that there could be the implication that they were copying language from another framework, dealing with prisoners who don't have statutory claims, and that they overlooked the particular questions that you pose in this case. So, Justice Jackson, and with all due respect to that suggestion, in your opinion, Justice Barrett, I think that every indication is to the contrary. If we look to the text, there are specific areas in 2255 where Congress talked about rules more generally, like in the statute of limitations, and then in 2255H it narrows that to rules of constitutional law. I think that's a pretty good indication that it knew there would be some claims that weren't constitutional ones, but it just talked about constitutional ones in H. I think generally this court assumes that Congress is aware of its precedents. I would think Congress would be aware of an important precedent like Davis. But let me ask you this then. Isn't there another why question then that comes from your reading, which is in a situation in which we have H, and H is surely saving some things from elimination as successive petitions, the things it's saving seem to be situations that are very much like this one. They're saying you can bring a second and successive petition if there's newly discovered evidence or if there's a new rule of constitutional law that's made retroactive and therefore would apply to you. Those two kinds of scenarios in which Congress is making very clear that they wanted people to be able to get past the second or successive bar seem to me to be substantively very similar to what is happening here to Mr. Jones. So my question is why would Congress have drawn the line to keep Mr. Jones out of the second and successive pass-through but allowed for these other people to keep going? First, as a matter of statutory interpretation, I do think you should be drawing the inference that when Congress has talked about similar things with specificity and then left this one out, that should be given some meaning. In terms of why, I think the best explanation is really twofold. First, these are really the claims of the most recent vintage. They were not recognized as a basis for post-conviction relief until Davis in 1974. So I could imagine Congress taking a little bit of a last-in, first-out approach when it cut down on claims in AEDPA. I think relatedly, we see throughout AEDPA that Congress just thought that constitutional claims were more important than statutory ones. We see that in certificates of appealability. It allows for appeals of constitutional claims but not statutory ones. Why wouldn't Congress have just said, and these statutory claims are precluded? I mean, Congress did not say that. It knows that it has a savings clause. It knows that the statutory claims under the savings clause are going into the habeas court. Why not just say it? Let me take the savings clause part separate. Why not say it? I think they probably would think it's pretty obvious. When I tell my kids they can have a second snack but only if it's fruits or vegetables, I don't usually feel the need to say, but definitely not ice cream. I feel like that's a different situation. I agree with that. Once they had ice cream before. Once they had ice cream before. Whatever H means, I mean, it's referring to 2255 motions, and so you have to make the jump to habeas. And the savings clause tells you when and where to make the jump. And without 2255H, that jump would have been made for statutory claims. So why not say in 2255, and we mean statutory claims too? So here are two things that I think are really important historically. These claims had never been brought in habeas. They were not recognized again until 1974 in Davis, and so they had only been brought in 2255 motions. And so I think that maybe there wasn't the natural thought then, oh, well, they're going to get sort of circumvented around, sent on a detour into this habeas area where they had never been. I think that's part of it. I mean, I do think the other part is how the saving clause itself had applied historically. I think Congress would have been very surprised to learn that after 1996, courts would take the saving clause, which had been a true backstop in circumstances like a dissolving sentencing court. In Hayman, the government gave examples that it was probably there in case there was war cutting off certain courts or in case there was an execution where someone couldn't get to a sentencing court fast enough. It was a true backstop, and that was the landscape that Congress was operating against. I guess what the government would say I think is the most compelling argument is that the savings clause specifically contemplates that a district court would have denied relief in an initial 2255 petition. And so the question is, having accepted that, what are the situations in which it would believe 2241 would come into play? And that is when traditional habeas relief would have been granted. Putting aside the petitioner's belief that it's the same as cause and effect, because I don't think so, I think miscarriage of justice stood on its own. I look at the words of the statute and see that it explicitly does not preclude traditional 2241 relief. That includes cases that are defined as miscarriage of justice. I don't know that I need to find a reason why Congress didn't include statutory claims. It didn't. And so I look at what the words of the two sections are and I say traditional habeas relief applies. If there's a miscarriage of justice here, the government says there's not, it's agreeing with you on the outcome of this case, and that's it. Why isn't that enough? Why do I have to care about whether or not, why Congress didn't do it? It just didn't do it. Well, Justice Sotomayor, I think the question then is just circling back to what negative implications are we reading from 2255? No, I'm reading the positive implications. 2241 does not preclude and has always included miscarriage of justice cases. Whether that's something that's come up in Davis or Daly or after Congress wrote the words or didn't write the words, it just didn't preclude that explicitly. So maybe this is a helpful way to frame this. The rules for second or successive 2255 motions used to be evaluated by is this a miscarriage of justice or would this violate the ends of justice exception? And what 2255H did was cut back on that by essentially codifying what Congress thought counted as sufficient miscarriages of justice. But it didn't say that. It gave two examples and didn't preclude all the others that fell under traditional habeas. And so then the question is, should the court read 2255's limits as just all being self-defeating to the extent that something would have been available previously? No, but you're reading it right now in a way that gives no meaning to it at all. Because I don't think you say it applies to cases that wouldn't be 2255 situations. I want to make sure I understand your question. I think maybe you're saying a circumstance in which the saving clause would apply for a second filing. Yes, exactly. I think the circumstances would be just the same as when it would apply for a first filing. Well, the problem is that those circumstances today would mean you wouldn't be in 2255 at all. You'd be in 2244. So let me give an example that maybe we'll make clear. There could be someone who filed a first 2255 motion and then they are authorized under 2255H to file a second. But now it is difficult or impossible to get to a sentencing court for whatever reason. The saving clause would apply in that context just as it would apply initially. And again, that's the way that it applied historically. There's a much more concerning type of superfluity on the other side, which is that the saving clause really didn't do anything for 50 years except to lie in wait, to spring into action and nullify a future congressional amendment. And that's really what the vision of the saving clause under both petitioner and the government's theory here is. I mean, I fully take the point. Thank you, Counselor. Can I ask, does the rule of lenity have any role to play here? I mean, it seems like we're asking a lot of questions about what it is that the government or Congress wanted in this particular situation. And what I don't know is why our confusion about that should be interpreted in such a way as to weigh against the criminal defendant who'd be sitting in jail for conduct that Congress says is not a crime. So if we don't know, if we don't know, like this situation, exactly what Congress is doing, why wouldn't we set up the interpretive scheme to say, as many courts have, as you pointed out, we're going to read this to allow this person to bring another habeas petition. And if Congress thinks that's wrong, they can change it. Clearly. So the rule of lenity is a principle of construction of penal statutes. The court has never applied it in circumstances sort of assessing the general availability of review here. So I don't think that that has any formal applicability. And I think generally the sort of clear statement rule that both sides are pushing on here doesn't really apply here where what we're talking about is Congress shaping an existing equitable doctrine. What the court was concerned about in cases like McQuiggan and Holland is sort of that Congress had forgotten about this equitable doctrine. But as I alluded to before my conversation with Justice Sotomayor, what 2255H represents is the congressional codification of an evolving abuse of the writ doctrine. That's how this court described it in cases like Selker. And so this isn't a circumstances where there's sort of a body of law Congress forgot about. They've sort of codified the specific rules. But Mr. Fagan says, and they included the savings clause to make sure that in that codification they didn't forget anything. And so when you then enter into this new world and there's confusion about whether this thing is actually in there, why shouldn't we interpret it to consistent with the savings clause, allow it to proceed? They didn't speak to it, and they were trying to codify. And when we get there, we don't see a clear statement that says this is either in or out. So then why wouldn't our position be, Congress, you have to tell us clearly that you meant to keep this out, especially when we see other provisions that look very similar that you are allowing to go forward? Because Congress acted against a backdrop of a saving clause that didn't look like that, right? They wouldn't have expected the saving clause to swoop in and provide a remedy here. It had never applied in those circumstances for almost half a century. And so to treat the saving clause as doing something new as a way of kind of wedging an actual innocence exception into a statute, I think is not consistent with the framing there. But I'm just wondering whether, you know, Congress wanted to enact the savings clause rather than having particular applications in mind, actually thought exactly what the savings clause says. Whenever this is ineffective as compared to the traditional habeas remedy. So your interpretation, which is, you know, is it practically available and is it practically accessible? And what's the other one you use? Is it... Do you have the procedures you need? You know, legally cognizable, as I think. It feels very jerry-rigged. It feels as though you're sort of taking these out of thin air when the text doesn't say anything about them. And, you know, you're trying to give some substance to the savings clause, but the savings clause just expresses a very simple principle, which is when, you know, the 22-5 motion isn't working, the habeas court takes over. I think I don't really quibble with that principle. But the question of when it's not really working, I think, relates to is there a problem with the sentencing court? That's what Congress changed in 1948. The venue, it put things in the sentencing court. It didn't change the scope. So it was worried about problems with that venue. And I think the idea that what it actually does is counteract any limitations that a future Congress would put on 22-55 is not really a sensical way to read that. I mean, I think if we thought of the statute of limitations, for example, as a different provision in 22-55, there's a one-year statute of limitations. There's no statute of limitations for federal habeas. It would be quite surprising to Congress, I think, to learn that when it put that one-year statute of limitations, that was really just a venue-shifting provision. If you file within a one-year, you stay in 22-55. But after a year, you're going to get circled around a habeas instead because now 22-55 is inadequate or ineffective. And if that's true for a statute of limitations principle, I think the same should be true for H, which is really just a statutory race judicata principle. I do understand the general concern by the court here about harshness. This court looked at 22-55H and said, in Dodd, it looked at 22-55H and said, EDPA and 22-55H are harsh, but they are not absurd, and so it had to apply them as is. And I think it's important to recall that there is a backstop here, and it's executive clemency. I know that the government says, you know, look, it's too easy to cry clemency in every case, but this is a very unusual set of cases that the government handled exclusively by executive clemency until 1974. And after EDPA in 1996, the first thing the government told courts was, if courts step back, we're ready to step up again. This has been our prerogative for most of the nation's history, and I do think that should give the court some comfort here, even if it wouldn't make the same judgment calls that Congress made in 22-55. Can I just ask one more thing? You said 22-55. You sort of agreed with Justice Kagan's premise that maybe the savings clause is generally about when is 22-55 not working, and you suggested a couple of situations in which that wouldn't work, because the court is not there or because the nature of the release is such that you couldn't get it or some sort of technical situations like that. What I'm still not so clear on is why 25-55 could not be working if, because of one of its provisions, it's, you know, unconstitutional or it doesn't allow you to have one clear shot at relief. Like, why isn't that a species of 22-55 is not working, and therefore you need to be in the habeas lane? So let me for just a moment put aside the constitutional point. I think there's really no argument that we're even in a realm of unconstitutionality here, and just focus on the rest. The problem is that what we are talking about in 22-55H or with a statute of limitations are really ordinary procedural limits. 22-55H is effectively a race judicata provision, and I think it would be very surprising for this court to say that when an ordinary race judicata provision is applied, when an ordinary statute of limitations is applied, those render a procedure inadequate or ineffective. But in those situations, isn't there a previous time in which you've had the chance to make your case? I understand what you're saying. If it was actually operating like an ordinary race judicata provision, you know, an ordinary statute of limitations where the person had an opportunity because the claim existed and they didn't bring it, so too bad, so sad. But what I'm worried about is 22-55 being read to operate, to preclude people who never had the chance to make this claim to be able to make it. You're putting those same limits on it, and I'm wondering if you've had a situation in which 22-55 is not working such that we need the savings cost. No, Justice Jackson, and this is an ordinary race judicata provision. This court said, I believe, in the 80s or 90s in federal department stores against Moiti, that race judicata operates even if there has been a subsequent claim, a subsequent change in the law that shows that a prior decision is wrong, that race judicata, there's no exception to race judicata in those circumstances. So the fact that 22-55H would apply a similar approach and then allow certain very specific exceptions, I don't think it's inconsistent with that tradition or enough to say that this is an inadequate procedure. Thank you, counsel. Justice Thomas? Yes, counsel. Could you take a step back? Before Davis and before AEDPA, I think we spent a lot of time spinning a lot of different parts. What was 22-55 designed to address? What problems? And how did it work? Sure. So I think everyone is on the same page that 22-55 was designed to address kind of an influx in claims in habeas court as a result of some expansions of habeas, both congressional and judicial. And so what I think the key in understanding the saving clause is, what Congress did was not to attempt to change the scope of habeas as it existed in 1948. It wanted to change the venue. It wanted to make things more convenient and move them to sentencing court. And so if you think of it that way, the saving clause is sort of a natural pair, that it comes and saves the circumstances in which there's a problem with the sentencing court as opposed to the habeas court. And I don't think that that sort of analogy extends to future procedural limits that Congress may put on it. Justice Alito? Justice Sotomayor? That Congress didn't choose practical problems. Those were a proposal, and they rejected that proposal. They had broader language than that proposal. So it wasn't just practical problems. I thought we have said that in 1948, Congress was thinking about the venue issue, but that it wanted to preserve all traditional habeas remedies. It wasn't looking to limit them at that time. So let me just take the two parts of that question. The first is I wouldn't give too much meaning to the different language here because this wasn't sort of a direct amendment of the Judicial Conference's proposal. If anything, there were contemporaneous suggestions that Congress chose inadequate or ineffective because the Judicial Conference's proposal was a little bit too loose. It said practicable or for other reasons, and there were concerns that courts might engage in almost a balancing test similar to foreign nonconvenience of, is this convenient to be in sentencing courts versus habeas courts? So Congress wanted to make sure it was true in feasibility, and for that reason chose inadequate or ineffective. I think that's probably the most consistent with the textual and historical narrative here. As for what this Court has said, I totally agree that in Hayman it suggested that at the time, as of 1948, the remedy in sentencing court was more or less identical to the remedy in habeas, but that wasn't its benchmark for inadequacy. When the Court later in the opinion went to decide whether this was inadequate, it did something much more like what I did at the start of my argument and said, well, you kind of need a hearing here, you can get a hearing, so it seems adequate to us. Same is true in Swain. In fact, I don't even think Swain would survive the government's theory because there was a difference between habeas and sentencing court there, but the analysis was the same. Justice Kagan? Just along the same lines. I mean, Congress did reject language that more fits your argument here, and you're saying, well, we're taking this general language, which basically says if it's not working here, go there. We're taking this general language and we're saying, and you're saying, that that is true when it's not practically accessible, that is true when it's not legally cognizable in the 2255 forum. Why not also when it's jurisdictionally barred in the 2255 forum? I mean, how is that any less, it's not working over here, so you should go over there and get the traditional benefit of the habeas court? So I think that it's jurisdictionally barred to sort of overlook what the full question here is, which is, is a remedy that offers you a prior full and fair opportunity, but now bars you because of an ordinary application of res judicata, is that remedy inadequate or ineffective? And I really do think courts around the country would be quite surprised to hear that whenever they apply Wright and Miller on res judicata, that they are becoming inadequate and ineffective, and that's why there is a basic difference between procedural limits in 2255, which can't be the source of inadequacy without just nullifying everything that Congress has done, and the more fundamental question of, can you get to this court, can this court hear these types of claims? Justice Gorsuch? Justice Kavanaugh? Justice Barrett? One final thing. I think the confusion that I'm having is that there appears to be common ground between you and the other side that what Congress was trying to do was not change the scope of habeas, and there also seems to be common ground, I think, that if you apply these procedural limits, you are changing the scope of habeas because you're cutting off claims that you could have previously brought. So that brings me to the question of, don't we need a clear statement from Congress that given its original intentions and the effect of the application of what you say is just an ordinary procedural rule, don't we need a clear statement that that's what they intended? And why not? So, Justice Jackson, with respect to your first point, I think there is common ground that in 1948, Congress wanted these to be effectively the same. I guess we differ in that I don't believe that Congress in 1948 handcuffed a future Congress from preventing any limits on 2255 without going back and revising an essentially defunct habeas remedy at that point, although I should flag, if the court is considering going down that path, it is going to have to grapple with the provision 2244A that the government mentioned, and in fact it did in AEDPA revise the availability of second or successive habeas applications. But putting that to the side and answering your more general question, there is a clear statement here in 2255H. It could not be clearer that Congress set forth precisely the circumstances in which it wanted to allow a second claim, and that ordinarily this court would draw a clear negative implication, as I think the government does for the conditions of H1 and H2, but just not for H overall. I think beyond that there is no kind of overarching clear statement rule that would apply here, and certainly if the provision was clear enough in Dodd, I think it's clear enough here as well. Thank you, Counsel. Mr. Ortiz, rebuttal? Your Honors, I have just three basic quick points. The first is that one of the reasons for a savings clause of this type is that Congress doesn't have to actually think of everything. If, for example, Congress in 1996 had added H1 but not H2, I doubt that anyone would believe that it categorically excluded review of all new constitutional claims of innocence. Also, discrepancies between traditional habeas procedure and standards under those of 2255 are a feature, not a bug, of savings clause like this, and Congress can always change things subject to constitutional constraints. Second, Your Honor, I just want to point out that a petitioner in Mr. Jones' situation cannot actually raise, as the Eighth Circuit believed, his claim of statutory innocence in his initial 2255 motion. If he had raised it on direct appeal, as Mr. Jones had, it would be foreclosed by the law of the case doctrine. If he had not raised it in his initial 2255 motion, it would be barred by procedural default. So there's no way really to get the claim in to district court in the first place. But if somehow he had actually gotten into district court in the first place, it would be barred by 2253C2, which allows the Court of Appeals to certify only constitutional questions, not statutory questions. So the hope of actually asking for an en banc to overturn the foreclosing circuit precedent is pretty hopeless, as is the hope for a cert grant. Also, finally, Your Honors, I'd like to point out that there's no real prospect of opening up the floodgates here. This is a very narrow category of cases, but also a fundamentally very important one. Thank you. Thank you, Counsel. Ms. Ratner, this Court appointed you to brief and argue this case as an amicus curiae in support of the judgment below. You have ably discharged that responsibility, for which we are grateful. The case is submitted.